**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| DONALD OLENDZKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 08-3196 |
| | ) | |
| NEIL ROSSI, BECKY SUDBRINK, | ) | |
| RICHARD PILLOW, JENNIFER STOUDT, | ) | |
| TERRY POLK and RICHARD ORR, | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

NOW COME the Defendants, NEIL ROSSI, BECKY SUDBRINK, RICHARD PILLOW, JENNIFER STOUDT, n/k/a JENNIFER WARD, TERRY POLK and RICHARD ORR, by and through their attorney, Lisa Madigan, Attorney General for the State of Illinois, and for their Reply in Support of Motion for Summary Judgment state as follows:

## I.  REPLY TO ADDITIONAL MATERIAL FACTS

**(I)Undisputed Material Facts**

The following Additional Facts are conceded to be material and undisputed:

1, 5, 8, 9, 10, 17, 18, 69 (but only with respect to the first office move in 2005), 82, 84, 86 (but only to the absence of a verbal threat, as opposed to threatening behavior), 115, 131, 144, 154, 157, 176, 216, 217 (only to the extent Plaintiff refers to the two incidents mentioned in Additional Fact 216), and 219 (only to the extent Plaintiff refers to the two incidents mentioned in Additional Fact 216).

**(II) Disputed Material Facts**

The following Additional Facts are conceded to be material but disputed:

None.

**(III) Disputed Immaterial Facts**

The following Additional Facts are disputed and immaterial:

2.      Plaintiff's self-serving, nonspecific affidavit, consisting of generalized statements regarding his relationship with unnamed persons at unknown times is not sufficient to create a genuine issue of fact.

3.      *See* No. 2 above.  Plaintiff's relationship with unknown persons prior to Defendants' contact with Plaintiff is immaterial.

4.      Plaintiff's self-serving, nonspecific affidavit, unsupported by the record, is insufficient to create a genuine issue of fact.  Plaintiff's relationship with J.R. Walls in 2004 is immaterial to this case.

5.      Plaintiff's self-serving, nonspecific affidavit, unsupported by the record, is insufficient to create a genuine issue of fact.  Plaintiff's nonspecific assertion that he "frequently" addressed issues with unnamed persons is immaterial.

6.       Plaintiff's self-serving, nonspecific affidavit, unsupported by the record, is insufficient to create a genuine issue of fact.  Defendant Rossi became Olendzki's supervisor in 2004.  Def.'s Ex. 3 at 11, 14.

7.      Defendant Sudbrink could not and did not resolve grievances.  Def.'s Ex. 5 at 13.

20.      Stout's nonspecific affidavit regarding the feelings of unnamed employees and management at JCC at unspecified times is insufficient to create a genuine issue of fact.  Stout's observations of Plaintiff's alleged relationships with unnamed persons is immaterial.  Stout has not worked at JCC since 2000.

2

21.     *See* No. 20 above.  Stout identifies no timeframe, individuals, or specific meetings.

22.     *See* No. 20 above.  Stout identifies no specific dates, does not define "frequently," does not state why Defendant Rossi and Pillow may have become angry, does not identify any speech, protected or otherwise, that Plaintiff engaged in.

23.     *See* No. 20 above.  Stout's affidavit does not demonstrate a basis for personal knowledge as to whether space in the Health Care Unit was available, or whether (unnamed) management "ignored" the union's complaints.

24.     All JCC employees are expected to raise safety or health issues, whether they belong to the union or not.  Def.'s Ex. 3 at 61; Def.'s Ex. 8 at 79; Def.'s Facts 17(b).

25.     Plaintiff's self-serving, nonspecific affidavit, unsupported by the record, is insufficient to create a genuine issue of fact.  Plaintiff was required to report health and safety issues as an employee of JCC.  Def.'s Facts 17(b), (d), (j), (k); Pl.'s Attachment 1, Ex. D at 7 ("Illustrative Examples" of work include the performance of other duties as required or assigned.)

26.      Plaintiff's self-serving, nonspecific affidavit, unsupported by the record, is insufficient to create a genuine issue of fact.  Defendant Sudbrink's alleged unspecified violations of the collective bargaining agreement are not material for the reason that they are not a matter of public concern.

27.     *See* No. 25 above.  Plaintiff's alleged speech is unprotected and therefore immaterial because Plaintiff was required to monitor the care of mentally ill inmates due to his employment as a psychologist, Def.'s Facts 17(c), (g), (h), and because the alleged speech was

3

not on a matter of public concern, but rather internal conditions within the prison.

28.      *See* No. 27 above.

29.      Plaintiff's self-serving, nonspecific affidavit, unsupported by the record, is insufficient to create a genuine issue of fact.

30.      *See* No. 25 above.  Health and safety matters within the prison must be reported by all employees and do not involve matters of public concern.

32.      Plaintiff was evaluated for his participation on the Health and Safety Committee. Plaintiff signed his evaluation listing this obligation of his position.  Def.'s Ex. 6 at 00019, 00027.

34.      Plaintiff's self-serving affidavit, unsupported by the record, is insufficient to create a genuine issue of fact.  Plaintiff was required to report health and safety issues as an employee of JCC.  Def.'s Facts 17(b), (d), (j), (k); Pl.'s Attachment 1, Ex. D at 7 ("Illustrative Examples" of work include the performance of other duties as required or assigned.)

35.      The dentist's hygiene was an internal concern, not a matter of public concern. Plaintiff was required to report sanitation problems.  Def.'s Facts 17(b), (d), (j).  Defendant Sudbrink did document the concern over soap.  Def.'s Ex. 52.

36.      *See* No. 29 above.  Plaintiff is required to raise safety matters as an employee of JCC.  Def.'s Facts. 17(b), (h), (i); Def.'s Ex. 6 at 4, no. 17 ("On an on-going basis, provide meaningful assistance and preventative measures towards the Agency's goal of establishing and maintaining a hooch and shank free environment in all facilities.").  Safety within the prison is an internal matter of concern, not a matter of public concern.

37.      *See* No. 29 above.  Plaintiff has not established a duty to comply with Plaintiff's

demands.  Plaintiff has shown no injury.  Plaintiff's concern is not a public concern.

38.     *See* No. 37 above.

39.     Watson nonspecific affidavit concerning unspecified behaviors on Defendant Sudbrink's part, and Plaintiff's unspecified concerns about those behaviors is insufficient to create a genuine issue of fact.  Defendant Sudbrink's alleged unspecified behavior is not a matter of public concern.

41.     *See* No. 29 above.  Plaintiff's relationship with a nonparty is immaterial.

42–49. *See* No. 29 above.  Alleged actions by nonparty J.R. Walls is immaterial.

50.     *See* No. 29 above.  Warden Walls granted Plaintiff's request.  Def.'s Ex. 3 at 55.

51–53. *See* No. 29 above.

54.     *See* No. 29 above.  Plaintiff has demonstrated no injury because of this decision.

55.     *See* No. 29 above.  Defendant Rossi gave a reason for the move.  Def.'s Ex. 17. Defendant Rossi did not refuse to talk with Plaintiff.  Def.'s Ex. 53.  Plaintiff does not dispute that his former office was used by Dr. Lochard.  Def.'s Facts 63.

56.     *See* No. 29 above.

57.     *See* No. 29 above.  Defendant Rossi instructed Plaintiff to work out his own schedule with the training coordinator.  Plaintiff did so, to Defendant Rossi's satisfaction.  Def.'s Ex. 54.

58–59. *See* No. 29 above.

60.     *See* No. 29 above.  Defendant Rossi reviewed Plaintiff's incident report, acknowledged Plaintiff's concerns, and spoke with the dentist.  The dentist's hygiene is not a matter of public concern.  Plaintiff is required to report sanitation issues because of his job.

62.     Plaintiff's call back claim is time barred.  Polk determined that Plaintiff was not entitled to call back pay per the terms of the union contract.  Def.'s Ex. 56.

63–64. *See* No. 29 above.  Plaintiff made it known he did not want to wear the pager after being denied call-back pay.  Def.'s Facts 20–24.

65.     *See* No. 29 above.

66.     *See* No. 29 above.  Plaintiff is required to raise safety matters as an employee of JCC, particularly concerning mentally ill inmates.  Def.'s Facts. 17(b), (c), (h), (i); Pl.'s Additional Facts 213.  The well being of mentally ill inmates and safety within the prison is an internal matter of concern, a matter within the scope of Plaintiff's employment, and not a matter of public concern.

67–68. *See* No. 29 above.  Plaintiff's statement regarding Defendant Polk's assessment of the propriety of Defendant Sudbrink's activities is inadmissible hearsay.

71.     *See* No. 29 above.  Wilkerson and Quinn have not demonstrative a sufficient basis for knowing whether Defendant Sudbrink's activities violated the union contract.  Wilkerson and Quinn's affidavit are not sufficiently specific to establish a genuine issue of fact.  Plaintiff has established no harm from Defendant's alleged activities.

72.     *See* No. 29 above.

73.     *See* No. 29 above.  Watson, Stout, and Wilkerson's affidavits are insufficiently specific and do not establish a basis for knowing whether Defendant Sudbrink violated the union contract.  Plaintiff's alleged conversations with Defendant Sudbrink involved a personal dispute between the two over internal work issues, and did not touch on a matter of public concern.

74.     *See* No. 29 above.

6

75.     *See* No. 29 above.  Plaintiff's position on the Health and Safety Committee was also part of his job.  Def.'s Facts 17(d).

77.     *See* No. 29 above.

78.     Quinn's affidavit is insufficiently specific to create a genuine issue of fact. Defendant Sudbrink made several specific complaints regarding Plaintiff's behavior toward her, including that Plaintiff once stood less than an inch away from her watching her pull charts, would yell at her not to touch medical charts, scolded her concerning a repaired suicide blanket, would throw his shoulders back, occupy her physical space, make her feel physically vulnerable, and scare her, and that he alleged in emails that Defendant Sudbrink was not doing her job, not dealing with issues he raised, and not providing Plaintiff with TM-02 forms or copies of medical information he believed he was entitled to receive.  Def.'s Ex. 5 at 25–33; Ex. 57 (detailing instances of harassment by Plaintiff).  Plaintiff does not dispute that Defendant Sudbrink did not work with or receive the TM-02 form he complains she denied him.  (*See* Facts 80–81.)  Plaintiff also does not dispute that Defendant Sudbrink determined that copies of medical files should not be made or forwarded to him because of privacy concerns.  (*See* Facts 91–98.)

79.     Rossi testified that he did not recall Defendant Sudbrink's complaints to generally be "that huge of a deal."

85.     *See* No. 29 above.  Plaintiff admits crying at inappropriate times.  Olendzki's Declaration ¶ 134.

87.     It is undisputed that Polk testified about the absence of incident reports as of June 2006.  However, incident reports have in fact been filed against Plaintiff, *see*, *e.g.*, Def.'s Ex. 57 at 00407, 00411, 00436–37, 01240–43, and Plaintiff does not dispute that Defendant Sudbrink's

discrimination and harassment complaint against Plaintiff was substantiated by the Department's Office of Affirmative Action.

88.    Plaintiff received a memorandum indicating that per Warden Polk, the Medical Director was to be called with all after-hours mental health issues.  Def.'s Facts 24, Ex. 1 at 56.

89.    Exhibit 27 to Plaintiff's deposition, Def.'s Ex. 1, does not indicate that nurses could no longer call Plaintiff.  Plaintiff does not dispute that the facility could not at that time be certain of reaching Plaintiff after-hours.  Def.'s Facts 25.

91.    *See* No. 29 above.  Plaintiff's claim is time-barred.

92.    *See* No. 29 above.  Defendant Sudbrink's alleged activities are internal concerns, not public concerns.

94–95. *See* No. 29 above.  Defendant Sudbrink was not Plaintiff's supervisor.  Def.'s Facts 10.  Plaintiff has not demonstrative any duty on Defendant Sudbrink's part to comply with his demands.

96.    *See* No. 29 above.  Defendant Sudbrink issued a memorandum on November 13, 2008 indicating that per instructions from the state privacy officer, telepsychiatry records were to be printed and considered original documents, and were not to be forwarded to anyone but the medical records person.  The memorandum did not single Plaintiff out as a person who would be denied records.  The original telepsychiatry records were to be kept in the medical record file in the Health Care Unit.  Def.'s Ex. 37.

98.    *See* No. 29 above.

101.    Any employee is expected to report sanitation issues as a function of his or her employment.  Def.'s Ex. 3 at 61, Def.'s Ex. 8 at 79; Pl.'s Additional Facts 100.  The dentist's

hygiene is not a matter of public concern.

103–105.        Quinn's affidavit is insufficiently specific regarding in what alleged way Plaintiff's actions were connected with the closing of the break room, and lacks a basis for knowledge as to who was responsible for that decision.  Plaintiff's claim is also time barred.

107.        *See* No. 29 above.  Plaintiff's claim is time-barred.

108.        Defendant Rossi testified to his *belief* that Defendant Polk moved Plaintiff's office because of a confrontation Plaintiff had with the dentist in the hallway.  Def.'s Ex. 3 at 59–60.  Polk testified that Plaintiff's office was moved to free up office space for Dr. Lochard. (Def.'s Facts 61.)  Plaintiff does not dispute that the office was in fact used by Dr. Lochard.

109.        NEMAT members also participate in drill exercises and call-outs.  Def.'s Ex. 8 at 48–49; Def.'s Ex. 3 at 43–44)  Plaintiff also participated in local hostage negotiation team drills. Def.'s Ex. 8 at Ex. 6.)

111–113.        Plaintiff attended a hostage crisis drill in Spring or Summer of 2006 during which he displayed inappropriate behaviors that caused NEMAT Coordinator Jeffrey Hooker to remove Plaintiff from the team.  Def.'s Ex. 11 at ¶¶ 4–7, 13.

114.        *See* No. 29 above.

116.        *See* No. 29 above.

118.        The memorandum did not ask for removal.  Rather, it provided reasons in support of removal, and was requested by Jeffrey Hooker.  Def.'s Ex. 8 at Ex. 5; Def.'s Ex. 11 at ¶ 10.

120.        Defendant Rossi testified that he recommended that Plaintiff be removed from the internal audit committee to free up time for Plaintiff, and that Plaintiff was in fact removed from that committee Def.'s Ex. 3 at 28.

121–122.     *See* No. 29 above.  Plaintiff's assertion that Trent Routien indicated that one of the wardens demanded Plaintiff's removal from NEMAT is inadmissible hearsay.

123.     Defendant Orr testified to a period of 4 to 6 years.

124.     Defendant Polk testified that he "maybe" had a minor role in Plaintiff's removal from NEMAT, in that he wrote a memorandum, at the request of NEMAT coordinator Jeffrey Hooker, listing reasons for Plaintiff's removal.  The fact that Plaintiff did not refuse to carry a pager is immaterial given that he was not ordered to carry the pager, and in fact admits that he did not want to carry the pager if he was not required to do so.  (Pl.'s Additional Facts 124). Defendant Polk did not testify that he did nothing to address Plaintiff's time issues other than encouraging Plaintiff's removal from NEMAT.  Defendant Polk testified that he attempted to address Plaintiff's lack of time by trying to get more psychiatric hours on the contract, and tried to find ways to accommodate Plaintiff.  Def.'s Ex. 8 at 59–60; Def.'s Ex. 20.

125.     Deputy Director Meek's statement is inadmissible hearsay.

128.     *See* No. 29 above.  Plaintiff does not dispute that there is no evidence that Defendant Orr was aware of the alleged meeting or was contacted by Defendant Rossi seeking Plaintiff's removal from NEMAT.  Def.'s Facts 39.  Plaintiff does not have any evidence that Jeff Hooker or Deputy Director Ron Meek, who jointly (and undisputedly) made the decision to remove Plaintiff from NEMAT Def.'s Facts 42 were made aware of the meeting or contacted by Rossi regarding Plaintiff's removal.

129.     *See* No. 29 above.  Defendant Rossi had to specifically order Plaintiff to prepare the call-line list of patients to be seen by the psychiatrist in 2006.  Def.'s Ex. 7.  Defendant Rossi's action was done in response to Plaintiff's stated reluctance to make triage decisions

regarding his patients. Def.'s Ex. 58. Defendant Rossi also had to instruct Plaintiff to work out his scheduling problems with the training coordinator in December 2006, Def.'s Ex. 54, and had to instruct Plaintiff to take his concerns to his supervisors, rather than confronting other staff-members, including the dentist. Def.'s Ex. 55 at 2; *see also* Def.'s Ex. 59 (Plaintiff was not completing mental health monthly data and weekly focus groups in 2006, which Plaintiff blamed on lack of clerical help.)

133. Defendant Polk testified that he could not recall whether he talked with Plaintiff about his failure to complete his job duties. Def.'s Ex. 8 at 64.

135. Defendant Polk testified that it did not occur to him that Plaintiff could not be on NEMAT if he did not carry his pager until after the pager was removed. Def.'s Ex. 8 at 57.

136. The fact that Plaintiff did not refuse to carry a pager is immaterial given that he was not ordered to carry the pager, and in fact admits that he did not want to carry the pager if he was not required to do so. Pl.'s Additional Facts 124. Polk's authorization for removal of the pager was done on after Plaintiff objected to carrying the pager. Def.'s Facts 20–21.

137. Plaintiff was sent an email indicating he should turn in his pager, noting that he was not required to wear it. Def.'s Ex. 2. Plaintiff admits in his additional facts that he stated he did not want to wear the pager unless required to do so. Pl.'s Additional Facts 124. No reasonable jury could conclude that Plaintiff was unaware of the reason for turning in the pager after Plaintiff pointedly asked if he was required to wear it after being denied callback pay. Def.'s Ex. 9. Whether Defendant Rossi refused to speak with Plaintiff further concerning the pager is immaterial.

138. *See* No. 29 above. Defendant Pillow testified that when Plaintiff saw new

11

inmates after 4 p.m. on Wednesdays, the inmates had to be escorted by a correctional officer, particularly because the inmates would not know where they were supposed to go.  Def.'s Ex. 24 at 39–40.

139.    *See* No. 29 above.  Plaintiff incorrectly states Defendant Rossi's testimony. Defendant Rossi did not state that most correctional officers lack keys to the Clinical Services Unit door.  Rather, Plaintiff testified that "not all" of them do, but that some perimeter officers do.  Those officers are scattered throughout the facility inside the perimeter fences, and might be 25 to 30 feet away.  A segregation unit or Health Care Unit officer could gain entry to the Clinical Services Unit by staff member, by electronic signal, or by having a key or being let in by an officer with a key.  Whether a segregation unit or Health Care Unit officer could gain entry to the Clinical Services Unit at a given time is immaterial given the presence of other perimeter officers available to respond to a problem.  Def.'s Ex. 3 at 71–73.

140.    *See* No. 29 above.  Although security was not stationed specifically in Clinical Services, Plaintiff had access to telephones, radios, other staff, and roving officers who could respond if needed.  Def.'s Ex. 21 at 28, 42; Def,'s Ex. 3 at 68, 71–73.   Plaintiff also had access to the incoming inmate's master file containing medical and criminal history.  Def.'s Ex. 21 at 22.  New inmates are never left alone; they are escorted by correctional officers because they do not know the facility.  Def.'s Ex. 24 at 40–41.

141.    *See* No. 29 above.

143.    Wilkerson's affidavit lacks a sufficient basis to establish knowledge of what inmates visited the Clinical Services Unit.  Wilkerson worked in the Healthcare Unit.  Wilkerson Declaration ¶ 9.

145.    *See* No. 29 above.

146.    *See* No. 29 above.  Defendant Rossi only testified that Plaintiff gave the proximity to the medical files as the reason for the requested move.  Def.'s Ex. 55–56.  Warden Walls authorized the move.  *Id.*

147.    *See* No. 29 above.  Defendant Polk made the decision to move Plaintiff's office. Def.'s Ex. 3 at 59.  Watson's affidavit lacks a sufficient basis to establish knowledge of the reasons given for the office move, or whether Plaintiff's former office remained vacant in the Health Care Unit.  In fact, there was no available for space in the Health Care Unit for Plaintiff to office in.  Def.'s Facts 63, 68; Def.'s Ex. 20.

148.    *See* No. 29 above.  Defendant Rossi did not direct Olendzki to see patients out of the operations conference room, but merely indicated he could run his call-lines there, since there was always security in that area.  Def.'s Ex. 60.  Defendant Rossi's email was sent after Plaintiff had complained about the lack of security in Clinical Services to Major Lowe.  Ex. 1 at 92–94, 99.  Plaintiff could have continued to see patients in Clinical if he wished.  *Id.*  Defendant Rossi offered a solution to Plaintiff's concern.  Def.'s Ex. 60.  Plaintiff admitted in an email to Defendant Polk that there was *not* an office in the Health Care Unit available for Plaintiff to see patients.  Def.'s Ex. 20; *see also* Def.'s Ex. 19.

150.    *See* No. 29 above.  Plaintiff had access to other staff and roving officers.  Def.'s Ex. 21 at 28, 42; Def.'s Ex. 3 at 68, 71–73.  This level of security was consistent with other institutions, including Taylorville Correctional Center.  Ex. 21 at 42–43.

152.    *See* No. 29 above.  Plaintiff responded that there was no office available in the Health Care Unit.  Def.'s Ex. 20.  Plaintiff was told that he could see patients in the Health Care

13

Unit in any room that happened to be available at that time.  Def.'s Ex. 19.

153.    *See* No. 29 above.

155.    *See* No. 29 above.  Plaintiff's alleged speech did not concern a matter of public

concern or even a union complaint.

158.    *See* No. 29 above.  Plaintiff offers no evidence connecting Plaintiff's office move

with discriminatory motive.

159.    *See* No. 29 above.  Def.'s Facts 73.

160.    *See* No. 29 above.  Plaintiff's testimony on pages 92–93 and 99 of his deposition

concerned his move back to Clinical under Warden Polk, not under Warden Stoudt, n/k/a Ward.

Ex. 1 at 91–93, 99.  Plaintiff cannot know what Major Lowe thought about the safety of

Plaintiff's office at that time.

161.    *See* No. 29 above.  Plaintiff offers no evidence demonstrating that this event was

proximately caused by Defendants or that Plaintiff suffered any injury.

162.    *See* No. 29 above.

163.    *See* No. 29 above.  Plaintiff's alleged speech concerns a purely private matter

concerning Plaintiff's working conditions.  Plaintiff has no evidence his concerns were ignored.

Plaintiff was able to secure security for after-hours appointments.  Pl.'s Additional Facts 167.

164.    *See* No. 29 above.  Major Lowe's purported statement concerning the vacancy of

rooms in the Health Care Unit is inadmissible hearsay.  Plaintiff was afforded the same adequate

security provided at similar institutions such as Taylorville Correctional Center, including radios,

phones, and roving security officers.  Def.'s Ex. 21 at 28, 42; Def.'s Ex. 3 at 68, 71–73.

165.    *See* No. 29 above.

166.     *See* No. 29 above.  Plaintiff was afforded the same adequate security provided at similar institutions such as Taylorville Correctional Center, including radios, phones, and roving security officers.  Def.'s Ex. 21 at 28, 42; Def.'s Ex. 3 at 68, 71–73.  Plaintiff was also able to obtain security during times in which he saw patients after hours.  Pl.'s Additional Facts 167.

168.     *See* No. 29 above.  Plaintiff's former office in the Health Care Unit was needed for telepsychiatry services.  Def.'s Facts 73.

170.     *See* No. 29 above.  Plaintiff asserts in additional fact 165 that he would merely "not be provided security" in the Clinical Services Unit.  No reasonable jury could conclude that Defendants actively ordered Plaintiff to specifically not have security when he saw inmates in Clinical Services, particularly where Plaintiff admits that Major Bigelow agreed to provide security for Plaintiff on Wednesdays (Pl.'s Additional Facts 167) and where Plaintiff claims no punishment for disobeying the alleged no-security order.

172.     *See* No. 29 above.  Defendant Ward testified that a delusional inmate *could* present a greater risk than one without such psychiatric issues, but any inmate can be a danger.  Def.'s Ex. 21 at 30.

173.     *See* No. 29 above.  Plaintiff's former office in the Health Care Unit was used by Dr. Lochard and later for telepsychiatry.  Def.'s Facts 63, 73; Pl.'s Additional Facts 175.

174.     *See* No. 29 above.  Plaintiff was afforded the same adequate security provided at similar institutions such as Taylorville Correctional Center, including radios, phones, and roving security officers.  Ex. 21 at 28, 42; Ex. 3 at 68, 71–73.  Plaintiff was also able to obtain security during times in which he saw patients after hours.  Pl.'s Additional Facts 167.

177.     *See* No. 29 above.  Plaintiff's alleged speech relates to an internal matter

15

regarding the amount of work he would be required to perform with regard to telepsychiatry.  It does not involve a public concern, and therefore is not protected.

178.     *See* No. 29 above.  Managing mentally ill inmates and ensuring their safety is a function of Plaintiff's job.  Def.'s Facts 17; Pl.'s Additional Facts 213.  Plaintiff's alleged speech did not involve a public concern.

179.     *See* No. 29 above.

180.     *See* No. 29 above.   Plaintiff has not demonstrated that Defendants had a duty to comply with Plaintiff's demands.

181–184.     *See* No. 29 above.   Plaintiff's alleged speech concerned internal matters related to the performance of his job.  It did not relate to a public concern and was not protected.

185.     *See* No. 29 above.  Defendant Pillow accommodated a request by the psychiatrist to shorten a list of patients to be seen after Plaintiff could no longer be consulted because he had left the facility.  Def.'s Facts 89.  Plaintiff has not demonstrated how he was harmed by this decision.  Plaintiff has not demonstrated how Defendants Pillow or Sudbrink would even have the information he sought, or why Plaintiff could not obtain it himself.

186.     *See* No. 29 above.

190.     *See* No. 29 above.

192–193.     *See* No. 29 above.

194.     *See* No. 29 above.  Plaintiff's assertion that his time slips were previously approved and were rescinded by Defendant Stoudt, n/k/a Ward is inadmissible hearsay.

195.     *See* No. 29 above.  Plaintiff's request was ultimately approved.  Def.'s Ex. 50.

196.     *See* No. 29 above.  Plaintiff has failed to demonstrate a duty to negotiate with the

union, or that Plaintiff was injured because of such alleged failure.

197.    *See* No. 29 above.  Plaintiff's alleged speech concern an internal, private matter related to his job requirements.  As such, Plaintiff was not speaking on a matter of public concern.

198.    *See* No. 29 above.  Plaintiff admits in this asserted fact that he was not deterred from filing grievances or exercising his First Amendment rights.

199.    *See* No. 29 above.

200–201.    *See* No. 29 above.  Plaintiff has not demonstrated that he suffered any injury as a result of Defendant Stoudt n/k/a Ward's alleged restriction of benefit time for security officers.

202.    *See* No. 29 above.  Plaintiff's alleged speech concern an internal matter of safety, as to which Plaintiff had a duty as an employee to relay to management.  Def.'s Ex. 17.  Plaintiff was not speaking on a matter of public concern.

203.    *See* No. 29 above.  Plaintiff has no evidence Defendant Stoudt n/k/a Ward submitted false information.  Plaintiff's claims rests on his claim, without support, that advance sick time requests are routinely approved.  Def.'s Facts 130.

204.    *See* No. 29 above.  Plaintiff has not established a duty to confer with him prior to promulgating institutional directives affecting his job.  Plaintiff fails to even establish what detriment Plaintiff suffered.

205.    *See* No. 29 above.  Plaintiff has not established any act or speech that resulted in Defendant Pillow's alleged action.

207.    *See* No. 29 above.

17

208.    Defendant Sudbrink provided that the duties of the former designated psych nurse would be handled by whichever nurse happened to be handling any given shift.  Ex. 46.

209.    *See* No. 29 above.  Plaintiff assumed the responsibilities of the designated psych nurse prior to the termination of that designation, such that Plaintiff's workload could not have been increased.  Def.'s Facts 117–118.

210–214.    *See* No. 29 above.

215.    *See* No. 29 above.  Plaintiff had access to the inmate's file and could have learned of an inmate's mental health history prior to making his assessment, if he chose to access the file.  Def.'s Ex. 21 at 22.

218.    *See* No. 29 above.

**(IV) Undisputed Immaterial Facts**

The following Additional Facts are undisputed but immaterial:

11, 12, 13, 14, 15, 16, 97.

31.    Plaintiff was required to serve on the Health and Safety Committee as part of his job.  Def.'s Facts 17(d).

33.    *See* No. 31 above.

40.

61.    No psychological evaluation was actually performed.  Def.'s Ex. 8 at 65.

70, 76, 80, 81, 90.

83.    No psychological evaluation was actually performed.  Def.'s Ex. 8 at 65.

93.

99–100.    *See* 31 above.  Plaintiff was required to report sanitation concerns.  Def.'s

18

Ex. 3 at 61, Def.'s Ex. 8 at 79; Pl.'s Additional Facts 100.  The dentist's hygiene is not a matter of public concern.

102, 106, 110, 117, 119, 126, 127, 130, 132, 134, 142.

149.    Plaintiff could have requested that an inmate be cuffed before seeing him in Clinical Services, where he'd seen inmates for 16 years without security, Def.'s Facts 54, or in any other location Plaintiff chose to see inmates.

151.    Plaintiff has demonstrated no harm from this event, or that it was proximately caused by Defendants.

156, 167.

169.    Plaintiff's method of seeing inmates in 2008 was no different than what he had to do when seeing inmates in Clinical Services from 1989 through 2006.  Def.'s Facts 53–58.

171, 175, 187, 188, 189, 191.

206.    None of the chronic clinics other than the mental health clinic have an individual serving in a capacity similar to the position Plaintiff held.  That is, whereas other chronic clinics have a designated nurse and a medical doctor appropriate for that clinic, the mental health clinic has a mental health professional (Plaintiff) and a medical doctor (psychiatrist).  Ex. 1 at 255–56.

## II.  ARGUMENT

**A.     Plaintiff must demonstrate but-for causation to avoid summary judgment.**

Plaintiff asserts that he need only establish that he engaged in a constitutionally protected conduct, and that his conduct was a *substantial* or *motivating* factor for retaliatory conduct.  Pl.'s Brief 64, 73.  Plaintiff misstates the current standard.  To establish a claim for retaliation under the First Amendment, Plaintiff must establish: 1) that he has engaged in constitutionally protected speech, 2) that *but for* the protected speech, his employer would not have taken the same action, and 3) that Plaintiff suffered a deprivation because of the employer's action. *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 604 F.3d 490, 500–01(7th Cir. 2010) (citing *Gross v. FBL Financial Servs., Inc.*, 129 S. Ct. 2343 (2009)). If a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to demonstrate that he would have taken the same action in the absence of the protected speech. *Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 670 (7th Cir. 2009). If the defendant carries this burden, the plaintiff must produce sufficient evidence to allow a reasonable jury to determine that the defendant's reasons were pretextual.  *Id.*

**B.     Plaintiff cannot demonstrate but-for causation.**

Plaintiff argues several points in favor of a *prima facie* showing of causation, none of which could lead a reasonable jury to conclude that Plaintiff suffered retaliation because of protected conduct engaged in by the Plaintiff.

Plaintiff first argues that he enjoyed a good working relationship with management prior to being elected to the union board in 2004.  Plaintiff offers no evidence of this relationship beyond his own self-serving conclusions.  It is well settled that "conclusory allegations and self-

serving affidavits, if not supported by the record, will not preclude summary judgment. *Keri v. Bd. of Trs. of Purdue University,* 458 F.3d 620, 628 (7th Cir.2006) (*citing Haywood v. N. Am. Van Lines, Inc.,* 121 F.3d 1066, 1071 (7th Cir.1997); *Butts v. Aurora Health Care, Inc.,* 387 F.3d 921, 925 (7th Cir.2004) (self-serving affidavits without factual support in the record carry no weight).  Plaintiff alleges that he filed multiple grievances, lodged several complaints over email, and asserted union rights on certain dates in certain committees, but does not attach any supporting evidence to substantiate his allegations.  Even if Plaintiff's self-serving affidavit is considered, the fact that Plaintiff enjoyed a good working relationship with unidentified management at unidentified periods prior to his tenure with the union does not support an inference that he would have continued to enjoy that relationship with the Defendants if he had not taken an active role in the union.  Plaintiff has no concrete evidence of any significant period of time in which Defendants worked with Plaintiff prior to his election to the union executive board.

Plaintiff also alleges in his self-serving affidavit that he raised a plethora of concerns on behalf of the union to multiple Defendants, asserting that he "frequently addressed issues" in multiple forums.   Under Rule 56(e), Plaintiff must set forth specific facts beyond mere conclusory allegations. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 887 (1990).  Bald assertions, entirely lacking in any recounting of specific facts such as required by Fed. R. Civ. Pro. 56(e) will not be sufficient to avoid summary judgment. *Babrocky v. Jewel Food Co.,* 773 F.2d 857, 861 (7th Cir. 1985).  Plaintiff's affidavit fails to set out specific instances of protected conduct forming a basis for retaliatory intent.   Instead, Plaintiff peppers his affidavit with alleged complaints of alleged (and factually unsupported) instances of wrong doing allegedly raised to

multiple persons at different times, and then attempts to assert the body of those complaints against a single actor, without demonstrating that the purported actor was even aware of any or all of those complaints. *See*, *e.g.*, Pl.'s Brief 76 (asserting that Plaintiff would present various union issues to Defendant Polk, citing paragraphs 59-68 of Plaintiff's affidavit, only four of which mention Defendant Polk, and only one of which specifically allege that any issues were addressed to Defendant Polk.)

Plaintiff similarly fails to identify which specific instances of speech he claims are protected. Rather, Plaintiff attempts to cloak all of his conduct under the guise of union activity, merely because he serves on the executive board. Although union-related speech may constitute protected conduct, it does not follow that all activities of a union or its members are constitutionally protected. *Gregorich v. Lund,* 54 F.3d 410, 415 (7th Cir.1995); *Hanover Twp. Fed. of Teachers Local 1954 (AFL-CIO),* 457 F.2d 456, 460 (7th Cir.1972). Plaintiff's argument is undermined by the testimony of the union president, Cameron Watson, indicating that Defendant Stoudt, n/k/a Ward, allowed him to speak at labor management meetings, just not Plaintiff. Watson Declaration ¶ 14. Because Mr. Watson is also an officer of the union who participates in labor management meetings and is an employee at Jacksonville Correctional Center, *id.* at ¶¶ 4–5, 13–14, the fact that Plaintiff was allegedly treated differently demonstrates that it was not Plaintiff's union activities that caused the treatment, but something unrelated.

Plaintiff also alleges multiple times that Defendants at various times grew angry with Plaintiff. However, retaliation cannot be inferred from a defendant's anger toward the plaintiff. *Johnson v. Univ. of Wis.-Eau Claire,* 70 F.3d 469, 482 (7th Cir.1995). Because Plaintiff has failed to set forth specific facts opposing summary judgment, the Court is left to speculate as to

22

whether the Defendants might have been angry with Plaintiff because of the content of his complaints, or because of the manner in which he raised them, such as whether Plaintiff asserted his position in a belligerent manner, as testified to by Defendant Sudbrink and substantiated by the Office of Affirmative Affairs.  *See* Def.'s Ex. 1 at 160–61; Def.'s Ex. 51; Def.'s Ex. 57. Mere speculation is insufficient to overcome a motion for summary judgment. *Truhlar v. U.S. Postal Serv.,* 600 F.3d 888, 893 (7th Cir. 2010).

Plaintiff states in his affidavit that on multiple occasions certain Defendants were violating contract provisions or that management did nothing to address Plaintiff's concerns, or otherwise ignored him.  Plaintiff provides no evidence to buttress his assertions, and does not provide a specific basis for concluding that Plaintiff is the ultimate authority as to whether a contract violation has occurred, or whether a particular person is failing to do their job.  Plaintiff also does not provide a foundation that would support a finding that Plaintiff has knowledge of whether management did, in fact, do nothing regarding his complaints.

Plaintiff also alleges that he is the victim of false allegations, but again fails to present any documentation whatsoever in support of his conclusion.  Plaintiff's claims rest on a long chain of unsupported inferences.  For example, Plaintiff asserts that he was removed from NEMAT because of improper motive on the part of Defendant Sudbrink.  Plaintiff's first unsupported link in the chain is that he raised multiple union concerns with Defendant Sudbrink, who developed a retaliatory motive against Plaintiff, on Plaintiff's assertion that she became angry with him.  We must speculate that she was angry with him because he raised a valid union concern, and not because of any belligerence on his part.  Plaintiff's next unsupported link is that Defendant Sudbrink passed on false information regarding Plaintiff's work habits and emotional

control.  Again, Plaintiff offers nothing but his conclusory self-serving affidavit in support of a conclusion that the information Defendant Sudbrink passed on was false.  Plaintiff's next fragile link is that Defendant Sudbrink's false information played a significant role in Defendant Polk's memorandum indicating reasons why Plaintiff should be removed from NEMAT.  Plaintiff offers no evidence to rebut Defendant Polk's testimony that his main concern was Plaintiff's failure to wear a pager.  Finally, Plaintiff asserts, without admissible evidence,[1] that Jeffrey Hooker terminated Plaintiff from NEMAT not because of the reasons stated in Mr. Hooker's affidavit, but because of the allegedly false information that leaked its way from Defendant Sudbrink, through Defendant Polk's memo, to Mr. Hooker.  This tenuous chain of events, unsupported by the record, is insufficient to avoid summary judgment.  *See Rogers v. City of Chicago,* 320 F.3d 748, 754 (7th Cir. 2003) (circumstantial evidence of a person's prohibited motive is irrelevant if that person is not the decisionmaker).

Plaintiff's affidavit consists entirely of a broad web of allegedly protected speech, delivered to multiple actors over several years, all of which Plaintiff uses to infer that Defendants must have been retaliating against him when decisions affecting his office or his job ran counter to Plaintiff's preferences.  Plaintiff's evidence falls well short of the but-for showing necessary to defeat a motion for summary judgment.  Even if Plaintiff could make such a showing, Plaintiff has no rebuttal to the valid reasons for their decisions, amply set out in the record in Defendants' motion and reply.

---

1 Plaintiff asserts that Trent Routien told Plaintiff that one of his wardens demanded that Plaintiff be removed from NEMAT.  This statement by an out of court declarant, offered for the truth of the matter asserted, is inadmissible hearsay.  *See* Additional Facts 121, 122.

WHEREFORE, for the foregoing reasons, and for the reasons stated in Defendants' statement of undisputed material facts and exhibits, Defendants respectfully request that this Court enter summary judgment in their favor.

Respectfully submitted,

NEIL ROSSI, BECKY SUDBRINK,
RICHARD PILLOW, JENNIFER STOUDT,
TERRY POLK and RICHARD ORR,

Defendants,

Joshua D. Ratz # 6293615     LISA MADIGAN, Attorney General,
Assistant Attorney General    State of Illinois,
500 South Second Street
Springfield, IL  62706      Attorney for Defendants.
Telephone: 217-782-2077
Facsimile:  217-524-5091    By:__s/Joshua D. Ratz_____
jratz@atg.state.il.us        Joshua D. Ratz
Of Counsel          Assistant Attorney General

25

**Olenzki v. Rossi et al.**
**USDC-CDIL Case No. 08-3196**

**CERTIFICATE OF SERVICE**

I hereby certify that on April 20, 2011, I electronically filed Defendants' Reply in

Support of Motion for Summary Judgment using the CM/ECF system which will send

notification of such filing to the following:

James P. Baker
carenbakerlaw@sbcglobal.net

and I hereby certify that on April 20, 2011, I mailed by United States Postal Service, the

document to the following non-registered participant:

None.

Respectfully submitted,

By:   s/Joshua D. Ratz
Joshua D. Ratz, #6293615
Assistant Attorney General
Attorney for Defendant
500 South Second Street
Springfield, IL  62706
Telephone: (217) 782-2077
Fax: (217) 524-5091
jratz@atg.state.il.us